By the Court. Slosson, J.
The question is, Whether a widow, entitled to a pension under the act of February 3d, 1853, (10 U. S. Stats, at large, 154,) can pledge her certificate to the person who acted as her attorney in procuring the pension from the government, as security for the payment of his compensation for such service ?
The act of 1853 merely declares that the widows of officers, etc., who were married subsequently to January, 1800, “ shall be entitled to a pension in the same manner as those who were married before that date.”
The only previous act which regulates pensions to widows, in respect to the period of their marriage, is that of July 29th, 1848, (9 Stats, at large, 265,) which secures the right to widows who had been married before 1st of January, 1800.
By this act, (§ 2,) “ any pledge, mortgage, sale, assignment, or transfer of any right, claim, or interest, in any way granted by this act,” is declared to be “ utterly void, and of no effect,” and it is further provided, that the annuities or pensions granted by the act “ shall not be liable to attachment, levy, or seizure by any process of law or equity, but shall come wholly to the personal benefit of the pensioner or annuitant entitled to the same.”
The defendant contends that the plaintiff having obtained her certificate from the government, it is “property,” and, as such, is distinguished from a “ right, claim, or interest” in or to a pension, and that being the plaintiff’s property, she had as much right to dispose of it by way of pledge, as she would have to dispose of the money when received upon it; and he claims that this construction is apparent from the language of this and other acts on *174 this subject. Thus, while the act of 1848 declares void any pledge of a right, claim, or interest, in a pension, it exempts from attachment, levy, and seizure, the pension itself. So in the act of July 7, 1888, (5 Statutes, at large, 303), a pledge of any right, claim, or interest in a pension, is declared to be invalid, while the pension itself is declared not to be liable to levy, etc.; and the defendant contends that Congress intended a distinction between the right to an interest in a pension and the pension itself, and that the policy and intention of the Pension Statutes was to protect persons entitled to pensions from their own acts, only during the time in which their right to the pension should remain unascertained, and afterwards from the acts of other parties only.
A careful examination and comparison of the various statutes on this subject has led us to a different conclusion.
Provisions, substantially similar to those contained in the acts .of 1838 and 1848, both of which are confined to the case of widows, are to be found in almost all the pension acts, and to our minds it is very apparent that Congress intended, in all these cases, to secure the benefit of its bounty to the pensioner personally, and to place it wholly not only beyond the reach of creditors, but beyond the consequences of any act of his own to which he might be tempted from necessity, weakness, or improvidence. Thus, in the first of the pension acts, 23d March, 1792, (1 Statutes, at large, 245,) it is declared that “no sale, transfer, or mortgage of the whole, or any part .of the pension, or arrearages of pension, payable to any soldier, or before the same shah become due, shall be valid; and every person claiming such pension, or arrearages of pension, or any part thereof, under a power of attorney or substitution, shall, before the same is paid, make oath that such power or substitution is not given by reason of any transfer of such pension or arrearages of pension and it is declared to be perjury to swear falsely in the matter.
A similar provision is found in the act of April 10, 1806, (2 Statutes, at large, 376, 5, 8.) So by section 4 of the act of March 18, 1818, (3 Statutes, at large, 410,) it is provided that “ no sale, transfer, or mortgage of the whole, or any part of the pension, payable in pursuance of the act, shall be valid.”
So by section 4 of the act of May 15, 1828, (4 Statutes, at large, 269,) it is provided that “the pay allowed by the act shall not im *175 any way be transferable or liable to attachment, levy, or seizure, by any legal process whatever, but shall come wholly to the personal benefit of the officer or soldier entitled to the same by the act.”
So by section 4 of the act of July 4, 1836, (5 Statutes, at large, 128), providing for half-pay to widows of officers, or who have died in the United States service since 1818, it is declared that any pledge, mortgage, sale, assignment, or transfer, of any right, claim, or interest (the words used in the act of 1848) in any money or half-pay granted by the act, shall be utterly void and of no effect;” and then it is provided, that where the application for the money is made by the attorney, such attorney, before a warrant shall be delivered to him, shall make oath that “he has no interest in said money by any pledge, mortgage, sale, assignment, or transfer, and that he does not know or believe that the same has been so disposed of to any person whatever.”
So by the act of July 7, 1838, before referred to, it is declared that a sale or pledge of any right, claim, or interest, in any pension or half-pay, is invalid, and the pension and half-pay are declared to be exempt from any liability to levy, etc., but to come wholly to the personal benefit of the pensioner or annuitant; and where the pensioner applies for payment by attorney, such attorney is to make oath “that he has no interest in said money by any pledge, surety, transfer, agreement, understanding, or arrangement, and that he does not know or believe that the same has been so disposed of to any other person.”
We think these various provisions speak a very plain and intelligible language, and indicate a uniform and consistent policy in the legislature which enacted them; and when it is considered that these pensions are payable annually, and designed for the benefit of a needy, aged, and in many cases, feeble and helpless class of persons, it is quite apparent that Congress never intended, in these various provisions, any such distinction between the right to a pension to be granted and the pension itself when granted, as is contended for, and that the words “right, claim, or interest,” are to be taken in a distributive sense, and to mean that no portion or share of, or interest in a pension already granted, as well as no right in a pension to be granted, shall be sold or hypothecated by the beneficiary. Indeed, the language of the act of 1848 *176 seems to admit of no other construction; it is, that ne pledge, etc., of any right, claim, or interest, in any way granted by this act, shall be valid. The right granted is to receive so much money a year by way of pension, and the interest of the annuitant in the grant is the property which he has in such right, that is, in the pension itself. The right to have a pension declared in her favor, as coming within the class of pensions described in the act may be included, but to restrict it to that would, in our judgment, be doing violence to the good sense and evident policy of the statute itself.
On the whole, we think clearly that the agreement, by way of pledge, set out in the answer, comes within the prohibition of the statute, and that the demurrer was, therefore, well taken.
Judgment at Special Term affirmed.